JOHN BERGIN *v.* DOUW WEMPLE, Administrator, &c.

For work, labor and services rendered to the keeper of a county poor house, by an inmate thereof and his wife, for the benefit of such keeper and in his business, and upon his promise to pay therefor, he is liable.

The keeper of a county poor house is not entitled, any more than a stranger, to the labor and services of the paupers therein, for his own advantage, without compensation; and any contract or promise he may make to pay for such labor will be obligatory upon him.

The jurisdiction of this court extends only to the examination of the legal conclusions of the judge or referee before whom a cause is tried, from the facts found by him. The court has no power to look into the evidence, or the case at large, for the purpose of reviewing or determining questions of fact.

*Appeal from a judgment of the Supreme Court.*

THE action was against David Wemple, since deceased, to recover for work, labor and services by the plaintiff and his wife, performed for the defendant and at his request. The defendant answered, alleging that he was keeper of the poor house of the county of Montgomery from the 17th of April, 1853, to the 1st of February, 1856, and during all which time the plaintiff and his wife were paupers and inmates of said poor house, and were maintained and supported at the expense of the county, and that they occasionally worked and labored in said poor house, and on the premises connected therewith, for the benefit of the county, and under the charge and direction of the defendant as such keeper, which is the labor mentioned and referred to in the complaint; that they were bound and required to perform such labor, and the county of Montgomery was entitled to such labor, without the said county or the defendant, as such keeper, or either of them, being in any way or manner accountable to the plaintiff therefor. For a further answer the defendant alleged that about the 1st of February, 1856, the plaintiff and defendant accounted together of and concerning the labor

mentioned in the complaint; and the defendant settled with and paid the plaintiff in full for all the labor thus done and performed by the plaintiff for.the defendant, and which was the same labor referred to in the complaint. The answer further alleged a set-off.

The cause was referred to *Archibald McFarlan, Esq.*, who found due to the plaintiff from the defendant for the work, labor and services claimed in the complaint, with interest on the demand from the 20th March, 1855, the sum of $189.57, and ordered judgment accordingly, for that amount, with costs of the action.

The referee found as facts: That on the 17th April, 1853, the plaintiff agreed with and hired to the defendant to work for him on the county poor house farm, in Montgomery county, at the price of $5 per month, and be boarded, not specifying the number of months, but to work until the spring work and seeding were done. That the plaintiff commenced working on the same day, and continued to work under this agreement for the defendant, until the 8th of August, 1853. That the plaintiff again commenced work on the same farm for the defendant, at his request, about the middle of December, 1850, and continued to work until 20th March, 1854, without any price being agreed upon for this service, being three months. That such work was worth $2.50 per month, and be boarded, making $7.50 as the value of the service. That on the 20th March, 1854, the plaintiff and defendant made an agreement by which the plaintiff was to work for the defendant for eight months at ten dollars per month at farming business, and be boarded, and that the plaintiff did work that time for the defendant as so agreed, immediately thereafter, commencing on said 20th March, 1854. That the plaintiff, after working out for the defendant said eight months, continued on and worked for the defendant till the 3d day of March, 1855, being three months and eleven days more, at the defendant's request, but without any agreement as to the price to be paid for the plaintiff's work after the expiration of said eight

months. That the plaintiff's services for that time were worth $3 per month and be boarded, making $10.

That the plaintiff's wife, Mary Bergin, worked at washing, mending and ironing, and as forewoman of the laundry department of the county poor house of said county, at the request of and for the defendant, which services the defendant promised and agreed to pay, before and when rendered, a reasonable compensation, from 1st April, 1853, till the 31st January, 1856, and that said plaintiff's wife so worked and attended to said business on an average at least two days in each week during all that time, being in all 147 weeks, and which services were worth two shillings and six pence per day, besides being boarded; and that the plaintiff's said wife rendered service and attended to the business of said defendant and said county in each week during the time said defendant was at said poor house, over and above the services so agreed to be paid for by the defendant, and when she was not so engaged more than sufficient to pay and compensate said defendant and said county for her board and clothing, and when not so engaged in the washing department. That the plaintiff had received from the defendant previous to the fall of 1853, in cash, towards and on her claim for these services, $5 at one time, and 25 cents at another time, and in the fall of 1854, $20, in February, 1865, $35, and in clothing $15, making in all $75.25, and no more. That there never has been any accounting together or balance struck between the parties of and concerning the demand claimed in the action; nor has there been a settlement of the account claimed at any time between the parties; nor has the defendant paid the same in full, or any part thereof except the above sum of $75.25.

The referee further found that the plaintiff and his family, consisting of a wife and four children, were emigrants, and came to this country from Ireland, in 1851. They came from Cayuga county in the winter of 1853, to the county of Montgomery, and went to the poor house in

the latter county, and remained there as inmates until the defendant came there as keeper, on the 1st April, 1853. The plaintiff and his wife were each able-bodied, strong and healthy persons, and able to earn their own support and living when the defendant first went to keep the poor house, and were not entitled to remain in said poor house as paupers after the defendant so went there on the 1st April, 1853. Their children were also healthy and robust. The defendant took possession of the poor house and farm, as keeper, on 1st April, 1853, at a salary of $400 a-year; and himself and family to be supported by the county at the county house, and the county to furnish a foreman only to assist him; and he, with that assistant, to work and carry on the poor house farm, and see and attend to the paupers. At this time, the plaintiff and his family were on the emigrant list or book, and were persons admitted by the commissioners of emigration at the city of New York, and were kept on said book during all the time the defendant was keeper, viz: from April 1, 1853, to February 1, 1856; the commissioners allowing and paying for such keeping, for the plaintiff and wife $1.25 each per week, and for each of the children $1.00 per week, during the whole time. In January, 1854, the board of supervisors entered into a written contract with the defendant, whereby the board leased to him, for the term of two years from the 1st February, 1854, the poor house farm, and he took possession under the lease on the 1st April, 1854, and continued during the term. By the terms of the lease, among other things, the defendant was to have the avails of the emigrant fund for his own use. The county was also to pay to him for each and every pauper, except transient paupers, the sum of sixty-two cents per week, and for transient paupers the sum of sixty-four cents per week; to be paid quarterly. From 1st April, 1854, to 1st February, 1856, and up to the time the defendant left the farm, the board and keeping of the plaintiff and his family were charged to the commissioners weekly at the prices above stated, and which the

defendant received under the contract with the county, and appropriated to his own use; and, during the same time, he charged and received from the county, under such contract, the sum of sixty-two cents per week for the board and keeping of the plaintiff and each member of his family. During the whole time the defendant was at the poor house, from April 1st, 1853, both the plaintiff and his wife were able to, and did by their work earn their living and maintain themselves; and neither the plaintiff or his wife knew that after they were hired by the defendant, in the spring of 1853, they were considered and continued as paupers on the books, and in the said poor house, and for whom the defendant was drawing pay from said county and commissioners of emigration. And that the services rendered for the defendant, and for which the plaintiff seeks to recover, were not rendered by the plaintiff and his said wife, or either of them, as paupers, and to which the county was entitled; but were rendered for the defendant on contracts made with him, and on his agreeing to pay the plaintiff therefor himself.

The defendant filed exceptions to the referee's conclusions of fact; and also to his conclusion of law from the facts found, that the plaintiff was entitled to recover of the defendant the sum of one hundred and forty-three dollars and seventy-five cents principal, and interest on that sum from March 20, 1855, making in all $189.57.

Several exceptions were taken on the trial to the admission of evidence, but no point is now made by the defendant's counsel in respect thereto.

On appeal to the supreme court, the judgment entered on the report of the referee was affirmed. The defendant now appeals to this court.

*H. C. Adams*, for the plaintiff.

*R. H. Cushney*, for the defendant.

WRIGHT, J.    There is nothing in this case that the court
can review.   Our jurisdiction extends to the correction of
errors of law only, and this has been often declared.   We
have no power to look into the evidence, or the case at
large, for any such purpose, but must take the facts found
by the subordinate tribunal; and if upon any view that
may be taken of them the judgment can be sustained, we
have no recourse but to affirm it.

The defendant was the keeper of the poor house of the
county of Montgomery, and occupied and worked the farm
connected therewith, from the 1st of April, 1853, to the
1st of February, 1856, the first year having a salary, and
the two last years working the farm for himself, and board-
ing and keeping the inmates of the poor house, under a
contract by which he was to have the proceeds of the emi-
grant fund for his own use, and also sixty-two cents per
week from the county, for each pauper.   The plaintiff and
his family were emigrants, and, when the defendant entered
into possession, inmates of the poor house.   Their names
were on the emigrant list or book, and were kept thereon
by the defendant during his whole service as keeper, and,
whilst he had charge of the county house and farm, under
his contract, he drew from the commissioners of emigration,
for the board and keeping of the plaintiff and his wife,
one dollar and twenty-five cents each per week, and for his
children one dollar each per week, and also from the
county sixty-two cents per week for each member of the
family.   The plaintiff and his wife were healthy and able-
bodied persons, and during all the time the defendant
occupied the poor house farm were able to, and did, by
their work, earn their living and maintain themselves, and
were not entitled legally to be considered or treated as
paupers.   There seems to have been a grave wrong com-
mitted by the defendant (without collusion with the plain-
tiff) in keeping the plaintiff and family as inmates of the
county house; but that was a matter between him and the
county.   The case is therefore to be considered as though

the plaintiff and his wife were properly inmates of the poor house, during the defendant's occupation as keeper. It can not be doubted that the paupers might be required to labor to a reasonable extent, and in a proper way, about the establishment; and for such labor and services rendered by direction of the keeper, not for his individual benefit, no liability would attach to any one. Hence, if the labor and services for which compensation was sought in this action were merely those required by the proper government of the institution, performed in the poor house and on the premises connected therewith, for the benefit of the county, under the direction of the defendant as keeper, neither the county or the defendant could be in any way or manner accountable to the plaintiff therefor.

But no such case is shown. The defendant, it is true, was the keeper of the county poor house, and the plaintiff and his wife inmates therein. The services, however, for which the recovery was had, were performed for the defendant, and at his request, and under and in pursuance of an express promise of recompense. The fact is found that the services were not rendered by the plaintiff and his wife, or either of them as paupers, and to which the county was entitled, but were rendered for the defendant on contracts made with him, and on his agreeing to pay the plaintiff therefor, himself. Whilst all of the plaintiff's labor was performed at the defendant's request, most of it was under express contracts, fixing the rate of compensation. The wife, also, from 1st April, 1853, to 1st February, 1856, worked two days in each week, in the laundry department of the poor house at the defendant's request, and upon his promise and agreement to pay for such services a reasonable compensation; and when not so engaged, during each week, she rendered services and attended to the defendant's business and that of the county, over and above the services so agreed to be paid for by the defendant, more than sufficient to pay and compensate the defendant and the county for her board and clothing.

Under this state of facts, there could be no question as to the defendant's liability. It was immaterial that he occupied the station of keeper of the poor house, and the plaintiff and his wife were inmates thereof. The services being rendered for his benefit, and upon his promise to compensate therefor, he is liable. Although the keeper, he was not entitled, more than a stranger, to the labor and services of the paupers, for his own advantage, without compensation; and any contract or promise to pay for such labor would be obligatory upon him. The defendant's counsel does not question his liability, if a promise to pay was established; but, insisting that it was not, at least, so far as the wife's services were concerned, and with a mistaken view of our power, asks us to review and determine this, and other questions of fact upon the evidence. We are driven to repeat, what we have often said before, that our jurisdiction extends only to the examination of the legal conclusions of the judge or referee from the facts found by him. The referee has found that the services of the plaintiff and wife were performed for the defendant, under an agreement to pay for part thereof a compensation fixed by the parties, and for the remainder a reasonable compensation; and that such services were worth the sum of $219, upon which claim the defendant has paid $75.25, and no more. We are controlled by these findings, and they fully sustain the recovery.

There were various exceptions taken on the trial by the defendant's counsel to this admission of evidence. They were manifestly frivolous, and no point is now made in respect thereto.

The judgment of the supreme court should be affirmed.

INGRAHAM, J. The referee finds that the plaintiff worked for the defendant, at his request, part of the time on the county farm and part of the time on the property of Wemple, at a sum agreed to be paid monthly for his services; that the wife also worked for Wemple, and that during all

the time the plaintiff and his family were boarded in the poor house, and the cost of such board charged to the commissioners, and also charged to commissioners of emigration, the plaintiff and his family being emigrants. The plaintiff was paid by Wemple, in part, for his services, which was allowed by the referee. The referee also finds that the plaintiff and his family were able-bodied persons, and that the keeping of them in the poor house was a fraud on the public.

All the questions involved were questions of fact for the referee, and with his decision we should not interfere. We are asked to review the case upon the facts, and reverse the judgment as being against the evidence. For this there is not the shadow of an excuse. There is ample testimony to show that the plaintiff worked for Wemple; that Wemple agreed to pay a fixed rate of wages, and that he afterwards admitted his liability by payments on account. Throughout the whole case there was no evidence to show that the plaintiff was ever informed that he was working on behalf of the public, but on the contrary the fact of payments on account, and of his being sent to work on the private property of Wemple, is sufficient to contradict such a supposition.

Besides, it would not follow that the commissioners were entitled to the labor of persons paid for by the commissioners of emigration. They received pay for their board, and were not, as of course, entitled to their labor also.

When the referee finds that the plaintiff and his family were kept on the books of the poor house as paupers, and that such arrangement was a gross fraud on the county and the commissioners of emigration, and that the services rendered were not rendered by the plaintiff and his wife as paupers, but on contracts made with the defendant, his findings are amply sustained by the evidence.

There is no reason whatever for interfering with this judgment, and the same should be affirmed.

All the judges concurring, judgment affirmed.