JANE BALDWIN, EXECUTRIX, AND W. B. HAWLEY, EXE-
CUTOR OF ALPHEUS BALDWIN, DECEASED, APPELLANTS, *v.*
NORMAN VAN DUSEN, RESPONDENT.

*Promissory Note—Consideration—Genuine Note—Infancy of Maker—Answer
—Proof of Fraud.*

Under an answer which alleges as a defence, a fraudulent sale of a note
with a representation that it, the note, was good, the defence is not estab-
lished where no fraud is proved, and the representation is found to be a war-
rantee *that the note was genuine*, especially where it is also found that the only
defect in respect to the note is, that it was made by an infant.

A note made by an infant is a sufficient consideration to sustain a promise
or contract for its purchase.

WOODRUFF, J.—I think it quite clear upon the proofs that the
representation made by the Plaintiff, at the time of the sale of the
note, amounted to a warrantee that the note was free from any
such defect as the infancy of the maker.

It amounted, according to its fair interpretation, to an under-
taking that it was a binding obligation.

And therefore I think the Supreme Court properly granted the
new trial, and might have placed their decision on the ground that
the referee erred in his finding of facts.

But the order of reversal does not state that the judgment
was reversed upon the facts, and without that this Court has juris-
diction to consider only whether, upon the pleadings and facts
found, the judgment was erroneous.

The answer of the Defendant sets up as a defence—

A denial that he made and delivered the note in suit.

That the consideration of the note was the note of Onley, an
infant, sold to Defendant by the Plaintiff.

That Onley refuses to pay it on the ground of infancy.

That Plaintiff, at the time of the sale, represented the note of
Onley to be good.

That the Defendant was ignorant of the infancy of Onley, and
that *Plaintiff knew* and *fraudulently* concealed the fact of

Onley's infancy, and represented the note to be good, for the purpose of inducing the Defendant to purchase it without further inquiry.

First. There is no allegation of mutual mistake, and claim to rescind upon that ground.

The answer, by alleging knowledge and fraudulent concealment by Plaintiff, expressly denies any claim or pretence of mutual mistake. Without an amendment the referee could not have sustained such a defence, even if the failure of the Defendant to *allege* a rescission and offer to return could have been obviated.

Second. The result that the answer amounts to (the making of the note sued upon being proved) is—1, that there was no sufficient consideration for Defendant's note, or that the consideration has failed; 2, that by a false and fraudulent representation the Plaintiff made the sale and procured the Defendant's note; or, *possibly*,

Third. That the representation amounted to a warrantee.

As to the first. The note of the infant was a sufficient consideration (in the absence of fraud or warrantee) to uphold the promise of the Defendant.

If the transaction was in all respects fair, the purchaser may, if he will, take upon himself the hazard or chance that the infant will pay the obligation note which he has signed; and if he chooses to pay or promise to pay therefor he will be bound (see cases cited: Roof v. Stafford, 7 Cow. at p. 181 ; and see also Slocum v. Hooker, 13 Barb. 536).

Second. The finding of the referee expressly denies and excludes the defence of fraud. He finds that neither of the parties, at the time of the sale, had any knowledge of the infancy of Onley.

Third. If the answer can, by a very liberal extension of its most obvious intent and meaning, be held to warrant proof of a warrantee, then, 1st, it is only a special warrantee that "the note is good," that is alleged, and the finding of the referee does not sustain this allegation. 2d. If the sale alleged in this answer would, ex vi termini, import a warrantee that the maker was legally bound to pay the note (which I cannot concede), still the finding

of the referee that " the Defendant agreed that the note of Onley was a *genuine* note, and not otherwise," forbids any implication of any other warrantee.

If the finding that he warranted the note to be a genuine note would not (as I think it would) alone prevent an implication that he also warranted its validity as a binding obligation, the finding of the referee that he did not agree further or otherwise does forbid such implication.

As already remarked, the question whether the finding of the referee is sustained by the proof is not before us. We may therefore, for illustration, suppose, in support of the finding, that on the trial it was proved that at the time of the sale the Plaintiff expressly stated that he warranted the note to be the genuine note of Onley, but that it must be distinctly understood that he made no other agreement or undertaking in respect to it.

This is in harmony with the finding of the referee, and, if sworn to, there would be no room for any implication of any other warrantee than the warrantee that the note was genuine— and this is the legal effect of the finding.

It only remains to consider whether, under an answer which alleges as a defence a fraudulent sale of a note with a representation that it is good, the defence is established where no fraud is proved, and the representation is found to be a warrantee that the note is the genuine note of Onley, it being also found that the note was made by Onley, and the defect therein arises from his infancy.

Waiving any discussion of the question whether, under the pleadings, a mere breach of such a warrantee can be insisted upon as a defence, I think the conclusion of the referee, that proof of Onley's infancy did not show a breach of that warrantee, was correct.

The term " genuine " imported nothing in regard to the collectibility of the instrument, or in regard to its legal effect or operation, other than according to its usual and ordinary meaning, viz. : that the note was *not false, fictitious, simulated,* spurious, counterfeit, or, in short, that the apparent maker did make and deliver the note offered for sale.

In reference to bank bills of exchange, promissory notes, and securities for money, the natural and general, if not the universal antithesis or opposite of genuine, is " counterfeit."

Hence, if we say of a bank bill, it is a *genuine bill*—i. e., not a counterfeit bill—we represent nothing in regard to the legal validity of the bill in any other respect, or of the ability of a holder to collect anything thereon.

I regret to say that, upon the finding of the referee on the facts, the conclusion of law that the Plaintiff is entitled to recover was correct.

I say it with regret, because I think it was a proper case for a reversal upon the evidence ; but if the party seeking to sustain the order does not see to it that the whole question is brought before us in a form that enables us to look into the proofs, though we may regret it, we are powerless to relieve him from the consequences.

The order granting a new trial must for these reasons be reversed.

All concur.

Reversed.

JOEL TIFFANY,
State Reporter.