MARY HARRIS AS ADMINISTRATRIX, etc., et. al., Appellants, *v.* NICHOLAS UEBELHOER, Respondent.

75  169
141  250

The presence in a public place of a blind man is not conclusive proof of negligence on his part, still less on the part of a female who accompanies him and who relies upon him for the exercise of his other faculties, she using her own faculty of sight to intelligently direct his strength and skill.

*It seems,* that where a blind man, accompanied by a person of fair intelligence to direct him in passing along a public way, where he has often safely passed before under the same guidance, is injured by some obstacle newly placed there, or by some person negligently running against him, the mere fact of his being in the public way is not, as matter of law, contributory negligence.

It is for the jury to determine whether he used a degree of care commensurate with all the circumstances, including his lack of vision.

E., plaintiff's intestate, with J., her husband, were crossing Buffalo river in the night time, in a small scow which J. was sculling, when the scow was struck and sunk by a steam-tug belonging to defendant, and E. was drowned. In an action to recover damages, plaintiff's evidence tended to show that J. was nearly blind, but able bodied and familiar with the management of small boats; that he had been accustomed to cross the river daily, with his wife, at that place and hour, he sculling and she giving directions; that it was usual for persons to be on the water in that kind of water craft; that the night was not so dark but that an object the size of the scow could be seen one hundred feet away, also that there was a lighted lantern in it; that J. called to those on defendant's tug, it was not stopped or its speed slackened, but it sheered from its course towards the scow; that if it had kept on in a straight course the collision would not have happened. *Held,* that the evidence justified a finding of negligence on the part of those managing the tug; that it was their duty to keep a look out ahead, and it was inferable from the evidence that this was not done; also that the facts that deceased was upon the water in the night time, and in the scow, or that she was with a blind man to propel and turn the scow, did not establish contributory negligence, as a matter of law; but that the question was properly submitted to the jury.

Defendant's counsel requested the court to charge, that, if the scow had no light as prescribed by act of Congress, which requires a good white light to be carried by every water craft navigating by hand, on any river or harbor, to be placed as prescribed by the board of supervising inspectors, it was some evidence on the question of negligence; the court refused so to charge, ruling that the law of Congress did not include a scow boat, but charged that it was a question for the jury whether there was a light upon the scow, and if not, whether that was negligence. No proof was

made that said board had prescribed the manner of showing a light on such craft. *Held,* that while the act of Congress includes craft like that in question, until the board mentioned had prescribed the manner the injunction to carry the light was inoperative; and that the refusal to charge was not error.

(Argued September 30, 1878; decided November 12, 1878.)

APPEAL from order of the General Term of the Superior Court of Buffalo, reversing a judgment in favor of plaintiff, entered upon a verdict.

This action was brought to recover damages for the alleged negligence of defendant, causing the death of Elizabeth C. Shelton, plaintiffs' intestate.

The evidence on the part of plaintiffs shows, that, on the evening of July 8, 1874, between nine and ten o'clock, the deceased and her husband, Joshua Shelton, with a boy, nine years old, started to cross the Buffalo river in a small boat called a scow, which was sculled by Shelton, with one oar. The distance across the river was about 250 feet, and the witnesses say the night was a " clear, dark night, star-light, not cloudy." Light enough so that objects the size of the scow could be seen 100 feet distant. Shelton was blind, and had been for several years. When he walked the streets his wife or son led him, and when he sculled the boat, which he often did in crossing the river with his wife, she was accustomed to call out " right" or " left" to him to enable him to avoid obstructions. Shelton was able bodied and was familiar with the management of such boats. He and his wife carried on a business in the city of Buffalo ; they lived across the river, and were in the habit of crossing the river several times each day, and returned to their home about this hour of the night ; other people were in the habit of using similar craft upon the river. While crossing the river on the night referred to, a steam-tug, owned by defendant, running down the river at the rate of about four miles an hour, came in collision with the scow, broke and upset it, and all three of its occupants were drowned. There was a lighted lantern in the scow ;

as the tug approached, Shelton called out to those in charge, "where are you going with that tug?" The scow had nearly passed across the course of the tug, so that if it had kept right on no collision would have occurred; instead of this, without stopping or slackening its speed, its course was turned to the left toward the scow and the collision occurred.

Further facts appear in the opinion.

*Frank R. Perkins*, for appellants. The defective sight of the intestate's husband was only one circumstance to be considered in connection with the others at the time of the collision. (*Glidden* v. *Reading*, 38 Vt., 52; *Davenport* v. *Ruckman*, 37 N. Y., 568; 2 S. & R. on Neg. [2d ed.], 487.) The fact that he, a blind man, was in the position in which he was when the accident occurred was not *per se* negligence. (*Healy* v. *Mayor, etc.*, 3 Hun, 708; *Alger* v. *City of Lowell*, 3 Al., 402; *Wynn* v. *Allard*, 5 Watts & Sergt. [Pa.], 524; *Robinson* v. *Pirche et al.*, 5 Cal., 460; *Stewart* v. *Machias*, Port., 48 Main., 470; *McGarry* v. *Loomis*, 63 N. Y., 104; *Fallon* v. *The Central Park R. R. Co.*, 64 id., 13; *Drew* v. *The Sixth Avenue R. R. Co.*, 26 id., 50; *Peach* v. *The City of Utica*, 10 Hun, 474.) The question of negligence was one of fact. (*McGovern* v. *N. Y. C. and H. R. R. R. Co.*, 67 N. Y., 418; *Thurber* v. *The H. B. M. and F. R. R.*, 60 id., 326; Sherman & Redfield on Negligence, 492, § 417; 486, § 413; 367, § 304; 36, § 32; *Healy* v. *Mayor of N. Y.*, 3 Hun, 708; *Healy* v. *Earl*, 30 N. Y., 208; *Savage* v. *The Com. Ex. Ins. Co.*, 36 id., 658; Sherman & Redfield on Negligence, § 32; *Walker* v. *Westfield*, 39 Vt., 246; *Durant* v. *Palmer*, 29 N. J. L. [5 Dutch.], 544; *Camp* v. *Wood*, 5 W. D., 131; *Hix* v. *P. R. R. Co.*, vol. 15, A. L. J., 478.) The oarsman had a right to rely upon the tug turning to the right and around the stern of the scow. (*Baker* v. *Savage*, 45 N. Y., 191.) The law will never hold it imprudent for one to act upon the presumption that another will act in accordance with the rights and duties of both. (*Ernst* v. *H. R. R. R. Co.*, 35 N. Y., 28; *Newton* v. *N. Y. C. R. R. Co.*,

29 id., 383; *Johnson* v. *Belden*, 2 Lans., 433; *Jetter* v. *N.
Y. and H. R. R. Co.*, 2 Keyes, 154; *Baxter* v. *Second
Avenue R. R. Co.*, 30 Howard, 219, 224; *Bacon* v. *Second
Avenue R. R. Co.*, 2 Daly, 127; *Ihl* v. *Forty-second Street
R. R. Co.*. 47 N. Y., 317; *Mungam* v. *Brooklyn R. R. Co.*,
38 id., 455; *Drew* v. *Sixth Avenue R. R. Co.*, 26 id., 49;
*Ireland* v. *O. H. and J. R. R. Co.*, 13 id., 526; *Gelespie* v.
*Newberg*, 54 id., 468; *Robinson* v. *N. Y. C. R. R.*, 65
Barb., 146.) The case was properly submitted to the jury
on the whole evidence and their verdict is conclusive on the
question of negligence and amount of damage. (*Bidwell* v.
*Lamont*, 17 How., 357; *Keller* v. *N. Y. C. R. R. Co.*, 24
id., 172 ; *Smith* v. *Tiffany*, 36 Barb., 23 ; *Bernhard* v.
*Brunner*, 4 Bos., 528; *Filer* v. *N. Y. C. R. R. Co.*, 49
N. Y., 47; *Walfkill* v. *Sixth Avenue R. R. Co.*, 38 id., 49;
*Berst* v. *L. S. and M. S. R. R. Co.*, 11 Hun, 346; *Sheehan*
v. *Edgar*, 58 N. Y., 631.) The request to charge as to
the carrying of lights by the scow, being based upon an
imaginary rule, not shown to have any existence, was prop-
erly denied. (*Pratt* v. *Ogden*, 34 N. Y., 21–22; *Rouse* v.
*Lewis*, 2 Keyes, 356; *Hope* v. *Lawrence*, 50 Barbour,
262.)

*H. C. Day*, for respondent. Plaintiffs, in order to recover,
were bound to prove that their intestate was not guilty of
contributory negligence. (*Reynolds, admr.*, v. *N. Y. C.
and H. R. R. R. Co.*, 58 N. Y., 248; *Warner* v. *N. Y. C.
R. R. Co.*, 44 id., 465–471; *Baxter* v. *Troy and Boston R.
R. Co.*, 41 id., 502–505; *Morrison, by guard.* v. *Erie R. R.
Co.*, 56 id., 302; *Button* v. *Hudson R. R. R. Co.*, 18 id.,
248; *Wilcox, admr., etc.* v. *Rome, Watertown and O. R. R.
Co.*, 39 id., 358; *Beck, admr.* v. *East River Ferry Co.*, 6
Robt. Sup. Ct. R., 82; *Ince* v. *East Boston F. Co.*, 106 Mass.
R., 149; *Morrison* v. *Erie R. R. Co.*, 56 N. Y., 302, per
GROVER.) There was no evidence tending to show negli-
gence on the part of the defendant. (*Boulick* v. *N. Y. R.
R. Co.*, Court of Appeals, 48 Howard, 399.)

Folger, J.    The questions in this case are two : First, whether there was sufficient evidence of negligence, on the part of the defendant, to submit the case to the jury, upon that issue ; and Second. Whether the evidence of the contributory negligence of the plaintiff's intestate was so palpable and conclusive, as that it was a matter of law that she was negligent.

As to the first ; it is testified that the plaintiff's intestate had in the scow a lantern, with a light burning within it ; that the night was not dark ; that an object on the water, the size of the scow, could be seen 100 feet away ; that the husband of the intestate, on board the scow, called audibly to those on the defendant's tug ; that the tug not only did not stop, or slack her speed, or keep straight on on her course, but sheered from it, so that she, in fact, pursued the scow, rather than avoided it ; and that if she had not so sheered, she would have avoided it.    Now here was testimony, which, whether contradicted or not it matters not, was proper for the consideration of the jury, and believing which, they might find from it that there was negligence in the management of the tug.    It was the duty of those controlling it to keep up a lookout ahead, with sight and hearing on the alert, for whatever was to be seen or heard in front.    It was negligence, if it was not kept up.    It was inferable from this testimony, that if it had been kept up, the scow, moving upon the water, with a light on board, would have been descried at a distance off not less than 100 feet, and that the call of the intestate's husband would have been heard, and that the one would have been seen, and the other heard, in time to have stopped the tug, or to have slowed her way, before the collision, or to have so changed her course, as to have passed the scow without contact with it.    And the fact that the course of the tug was changed, in these circumstances, but so fatally in the wrong direction as really to produce the collision, was a fact, if established to the satisfaction of the jury, from which they might infer that there had been upon the tug a want of a prior, continu-

ous and vigilant lookout, and that the perception of the scow, at last, by those navigating the tug, was a sudden surprise upon them, leading to the impulsive adoption of wrong methods for the avoidance of injury. There was in this testimony, if believed by the jury, that from which they could be sustained in finding, that if there had been a watchful lookout kept up on board the tug, the scow would have been seen, or the voice from it heard, and the course of the two being at right angles, or nearly so, an intelligent, careful and dutiful management of the tug would have so directed her course as that she would have readily passed the scow, astern of and clear of it.

As to the second question; if there was contributory negligence on the part of the plaintiff's intestate, so palpable as to be so held as a matter of law, it is to be based on two facts ; first, that she was at all upon the water, on that night, in that scow, whatever might have been the attendance and assistance which she had ; and second, that she was there, with a man blind, or nearly blind, to give the moving power and course to the scow. As to the first ; it was inferable from the testimony that it was usual for persons to be on that water, in that kind of water craft ; that it was the constant habit of the intestate to cross, as she was thus crossing, over that water, at that place, at about that hour ; that the night was not so dark, but that the scow could be seen one hundred feet away, and that besides, she had provided a light, and had it shining upon her boat ; and that she had that help and strength and skill upon it, which had often taken her safely over. So far as prior safe and successful experiments go to negative a negligent frame of mind, in making another, in similar circumstances, it must be conceded that here were sufficient. It cannot be said, as matter of law, that it was negligent and careless, lacking of prudent forethought, to attempt that which others often undertook with safety, and which the party herself had often herself achieved, without harm and without imminent peril.

But the stress of the argument for her negligence is upon the second head. It is beyond dispute, that the husband of the intestate was so far deficient in the physical faculty of seeing, as to be practically blind. But the fact of blindness, coupled with the presence in public places of one thus afflicted, is not *per se* conclusive proof of negligence in the blind person; still less in one who accompanies him, and who, relying upon him for the exercise of his faculties which he retains, uses her own faculty of seeing, so as to intelligently direct his strength and his skill. (*Davenport* v. *Ruckman*, 37 N. Y., 568; *Requa* v. *City of Rochester*, 45 id., 129.) We must assume that the creek, across which the plaintiff's intestate was moving, was a public highway. As such, it was as much open to the use of a blind man as one having eyesight. A public highway is liable to use, and may be of right used in the darkest night; a night so dark as that the keenest and clearest vision would not be able to detect obstacles and defects. In such case, every man traveling upon it is practically a blind man. Yet if he be injured by an obstacle or defect, without the absence of what, in the circumstances, are ordinary prudence and care upon his part, he is not remediless. The fact that, having eyes he could not see the cause of the injury, is not *per se* such conclusive evidence of his negligence as that the law must so adjudge, as matter of law. Blindness, of itself, is not negligence, any more than the obscurity of sight by the absence of light. The practical result of both is the same, viz.: That the person placed in either category cannot see. And in the one case, as well as in the other, the lack of the power to see must be taken into the account, and the conduct of the person thus hindered must be considered, and he must be held to such requirement of action as is reasonable in the peculiar situation in which he is found. He must be more cautious. He must bring about him greater guards, and go more slowly and tentatively than if he had his eyesight, or the light of day shone upon him. And it remains the question, whether the blind man, or the man in the dark, did so conduct himself, as he was

bound to do under the circumstances, and as would bring his acts up to the rule of that care and prudence which an ordinarily cautious person would use in a like position. This may, from the force of the testimony, be sometimes a question of law. It is likely oftener to be a question of fact. If a blind man, painfully conscious of his loss of faculty, took to his side a person of fair intelligence, say his wife, and by the direction given by her touch or her voice ventured along a public way, where he had often safely passed before, under the same guidance, but met and was injured by an obstacle newly placed there; or was run against and hurt by the headlong and careless rush of another; it would not do to say that, as a matter of law, the blind man was, from the bare fact of being in a public way, negligent, so that he could not maintain an action. It would be for the jury to find, from all of the facts, whether he had used a degree of care commensurate with all the circumstances, including his lack of vision. A conclusion that such degree of care was used is more ready in the case of one who, possessed of all her physical faculties, goes upon a way over which she has often gone in safety, and where others were used to go in safety, by means which she has before found enough therefor, in a water-craft easily manageable, and taking precaution to warn others of her proximity, and calling in the aid of one blind, not that he should find the way for her, but that he should lay out the powers remaining to him in full use, as she should direct. She has the right, in using a creek or other public highway, to assume that all others traversing it will do so with a due regard to her right to be upon it, and that they will proceed with ordinary and reasonable care. Add to this, that she has the experience and skill to direct what should be the course and speed of the scow; that her husband has the strength of arm and skill in the use of the oar, to send forward or turn aside the scow, as bidden by her. He was the propelling power of the boat and the rudder of it, and she the pilot, skilled to quicken or slacken forward movement, or to change the course of it, by word to him,

which he was apt to catch and ready to obey. In the case in hand, they had had experience together of years, in this passage, by this method of a conjunction of their faculties. It will hardly be contended, that if that scow had been moved forward by machinery. and changed in its course and direction by a rudder, and she had been skilled in the use of both, that it was negligent for her to put out upon the creek in it, on that night. Yet her husband, the blind man, was, in the ready and intelligent use of the faculties that remained to him, not other, in effect, than inanimate machinery and appendage,— certainly not less safe. There were the eyes and ears of the intestate, both experienced to apprehend danger, and her skilled judgment to conceive the way to avoid it, and her voice, which he was accustomed to hear and obey, to direct the movement and control the speed, and when need was, to change the course of the scow. In such case, the fact of his blindness — that fact merely — is not enough to warrant a court in saying that, as matter of law, it was contributory negligence in the intestate to venture on the water. His blindness, though it is a fact, is not the con-- trolling fact, in the inquiry. And it is a question for a jury, on all of the facts of the case, whether there was contributory negligence in the plaintiff's intestate ; and there is to be weighed by them, that the same passage had often before been made in safety by the same persons, with the same and no other appliances ; and they were to look at the particular circumstances of that night ; the state of it and the weather ; the crowded or open condition of the creek ; whether or not the scow had a light on board ; the management of the scow by the intestate ; and all other facts. If that blindness was the cause of any hesitation or fright or confusion, or other action or any want of action, which helped to the catastrophe, it is to be charged therewith, and the intestate is to be charged therewith. But it does not of itself, paramount and superior to all the other facts of the case, fix upon her contributory negligence.

The case, in this respect, seems to have been judiciously

submitted to the jury.   It was a question for them, and with their decision we must be content.

There is still another matter.   The defendant asked the court to charge, that if the scow had no light, as prescribed by act of Congress, then it was some evidence on the question of the negligence of the plaintiff's intestate.   The court refused so to charge, and ruled that the law of Congress did not include a scow boat, like that which was used.   To which the defendant excepted.   But the court did instruct the jury, that whether there was a light upon the scow, was a question for them, and that if there was none, it was for them to say whether that fact was evidence of negligence. The defendant took no exception to this latter instruction ; and it is noticed here, only to show that the trial court did not ignore the matter of a light.

We do not think that the court was in error in refusing to charge as requested.   It is so, that the law of Congress requires that upon each and every water craft, navigating by hand power any harbor or river, there shall be carried from sunset to sunrise one or more good white lights.   So that, so far as a requirement to carry a light is concerned, the law of Congress does include such a boat as the plaintiff's intestate was in on that night.   But there is another important provision ; the boat is to carry a light, yet it is to be placed in such manner as shall be prescribed by the board of supervising inspectors.   Now the demand of the law of Congress is not alone that a light be carried. It is also that it be carried, placed in such manner as shall be prescribed by a particular board.   Until that board shall prescribe the manner, the injunction to carry the light is not operative, and is not susceptible of obedience.   Hence there is no failure of compliance with law, and of course no negligence, so far as the direction of the law is concerned.   The defendants made no proof that the board of supervising inspectors had ever prescribed in what manner a light should be placed upon a scow boat, moved by hand power in the waters of a harbor or river.   So that the court was right in

saying that the law of Congress, so far as it appeared to it, did not apply to such a water craft as this scow. It did not yet apply; for no rule had been given, so far as appeared, in what manner it should be placed.

We are, therefore, of the mind that there was no error done on the trial of this case; and that the order of the General Term, granting a new trial, should be reversed, and that the judgment, on the verdict of the jury, in favor of the plaintiff, should be affirmed.

All concur, except Miller and Earl, JJ., absent at argument.

Order reversed and judgment affirmed.