### BICKFORD *v.* MENIER *et al.*

(*Supreme Court, General Term, First Department.* April 18, 1890.)

WITNESS—CREDIBILITY—TESTIMONY ON SECOND TRIAL.

    The fact that a witness on the second trial of a cause supplies crucial testimony which he did not mention when he testified on the former trial, will not justify a refusal to submit such testimony to the jury.

Appeal from circuit court, New York county.

Action by Elizabeth Bickford against Henri Menier, Gaston Menier, and Albert Menier for money loaned. Defendants, chocolate manufacturers, residing and doing business in France, sent Edward Bickford, a clerk in their London house, to New York to receive consignments of their goods, sell, and remit. While in New York he borrowed £1,200 of plaintiff, his sister, to meet the expenses of the business. Plaintiff recovered a judgment, which was reversed by the court of appeals, there being no evidence or claim that Bickford had written or verbal authority to borrow money for defendants, and no facts appearing from which such authority could be implied. At the second trial the court dismissed the complaint, and from the judgment thereupon entered in favor of defendants plaintiff appeals. For opinion of court of appeals reversing the former judgment, see 14 N. E. Rep. 438.

Argued before VAN BRUNT, P. J., and BARTLETT and BARRETT, JJ.

*James M. Smith,* for appellant. *Hugh L. Cole,* for respondents.

BARRETT, J. The question presented by this appeal is whether the case made by the plaintiff upon the second trial of this action differs materially from that which underwent the scrutiny of the court of appeals upon the final review of the first trial. 107 N. Y. 490, 14 N. E. Rep. 438. We have carefully examined the two records, and are of opinion that the plaintiff, upon this second trial, supplied what was wanting upon the former trial, namely, evidence of her brother's actual authority to borrow money for the defendants. There were many circumstances in the case tending to throw doubt upon this fresh evidence, and to impair the credibility of the witness who gave it, Mr. Edward Bickford. It is, indeed, argued with some color of proba-

bility that this testimony is a variation from that originally given, occurring to the witness only after the ruling of the court of appeals. We cannot say, however, that this new testimony is so inherently improbable, or that it was so radically impeached, as to justify a dismissal of the complaint. As to part of the amount sued for, (the two items of £200 each,) this witness Bickford declared that, as far back as the year 1879, he actually exhibited a book of account, indicating what he had done, to one of the defendants, and to their general agent in London, one Guenin; that this agent was specifically informed of the borrowing of this £400, and made no objection to it, simply inquiring whether it was necessary for the business, and being told that it was; and that Mr. Gaston Menier had the opportunity to see it as entered in the book, and probably did so see it. On the latter head, the witness says: "I showed it to Mr. Menier and to Mr. Guenin; showed it to both of them." And again: "The £400 is in that book, November. Guenin saw that page in that book in London, when I was there. Mr. Gaston Menier saw it. I exhibited it him." The witness, it is true, admits that he may not have pointed out to Mr. Menier these specific items of £200 each, but there certainly was enough in his testimony to call for the submission to the jury of the question of ratification on that head, as well as the question of original authority, especially in view of the distinct statement that the money thus borrowed was used and expended in the defendants' business, and for their purposes. As to the remaining £800, Bickford testified to direct authority to borrow, when required. This authority he received from Guenin, but the defendants explicitly told him—so at least he says—to take his instructions from Guenin. This is his testimony on that head: "My instructions from them [the defendants] were to follow out Mr. Guenin's instructions." And again: "Mr. Emil Menier gave me the particulars to carry out what Mr. Guenin authorized me." Here was neither limit nor restriction, and Bickford was thereupon justified in taking all his authority from Guenin, including the authority to borrow money when required in the business. This testimony was substantially new, and, if credited or undenied, it was sufficient to authorize a recovery. Upon the first trial, it was not claimed, as observed by RUGER, C. J., (107 N. Y. 492, 14 N. E. Rep. 438,) that Edward Bickford had "any positive unwritten or verbal authority" to borrow money for the defendants. Nor was there any evidence upon that trial that the loans were made to the defendants, or upon their credit, nor that the plaintiff relied upon any representation made by her brother that he had authority to borrow for the defendants. 107 N. Y. 498, 14 N. E. Rep. 441. Upon the present trial, however, Bickford testified that he "told his sister it was necessary to have some means,—some money; that the accounts were not coming in; collections were not being made as rapidly as they should be to meet the necessary disbursements of the business, (and that she was perfectly safe in loaning that money to Mr. Menier.)" The words in parentheses were stricken out by the learned court, but we see no reason for confining the witness to but a part of the representation upon which the loan was requested. It is thus evident that new and important testimony, upon more than one point, was given upon the present trial. The witness was closely interrogated as to his reasons for omitting such crucial testimony upon the previous trial, and we can see that his explanations might perhaps have been deemed unsatisfactory by a sensible jury. But that did not justify the refusal to submit the testimony with such explanations and the criticisms thereon to their consideration, and we think that the question of actual authority, and of the loans to the defendants thereunder, should have been so submitted. For these reasons, the judgment should be reversed, and a new trial ordered, with costs to abide the event. All concur.