JOHN H. TITUS, as Administrator, etc., of ALEXANDER WHITFORD, Deceased, Respondent, *v.* THE TOWN OF NEW SCOTLAND, in the County of Albany, Appellant.

*Contributory negligence — measure of caution required — negligence of a driver imputed to his companion.*

The care and caution which it is necessary should be affirmatively established by a person who seeks to recover the damages resulting from an injury caused by another's negligence is to be measured by the circumstances of the particular case, and is commensurate with the difficulties and dangers of the locality in question and of the danger to be apprehended.

In an action of such a nature, brought by an administrator to recover damages resulting from the death of his intestate, it appeared that the accident happened upon a very dark night; that a person named Cameron was driving home with the intestate; that both had been drinking, and that the intestate was unable to remain on the seat of the wagon, and was down upon his knees in front of it; that Cameron knew that he was approaching a narrow bridge, and also knew that he had already strayed from the road upon several occasions. He testified that he could not see the road at all from his seat; that he made no effort to guide his horses, leaving that to their instinct; that he was not looking out for the bridge particularly; that just before he reached the bridge he was in the ditch at the side of the road, and that if the horses had not, of their own accord, turned into the road, he would have been three feet to one side of the bridge. His testimony also tended to show that when he got upon the bridge his wheels went straight upon the plank, but that at about the fourth plank the wheels sunk because that plank was too short. The wagon was upset and fell into the stream and upon the intestate, holding him there until he was dead.

*Held,* that it did not appear that Cameron had exercised proper care, and that his lack of care was imputable to the intestate and prevented a recovery by his administrator.

PUTNAM, J., dissenting.

APPEAL by the defendant, The Town of New Scotland, in the county of Albany, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Greene on the 2d day of March, 1895, upon the verdict of a jury rendered after a trial at the Greene Circuit, and also from an order entered in said clerk's office on the 27th day of February, 1895, denying the defendant's motion for a new trial made upon the minutes.

*J. Newton Fiero*, for the appellant.

*J. A. Griswold*, for the respondent.

HERRICK, J. :

This is an appeal from a judgment entered upon the verdict of a jury in favor of the plaintiff and against the defendant, and from an order denying a motion for a new trial.

The plaintiff's intestate was killed in an accident occasioned by a wagon, in which he was being driven, going off the side of a bridge located in the defendant town.

The alleged negligence of the defendant was in maintaining, or permitting to remain, a bridge upon one of its highways without guards or rails, and, as is claimed, with the planks constituting the floor thereof of unequal lengths, so that the wagon in which plaintiff's intestate was at the time of the accident, after going a short distance upon the bridge, came to a place where the planking thereof did not extend as far out to the side as at the entrance to the bridge, in consequence of which the wheels of such wagon ran off the side of the bridge, overturned the wagon, precipitating the intestate into a creek below, the wagon falling upon him and keeping him there until he was dead.

For the purposes of this discussion it will be assumed that the evidence given upon the trial was sufficient to warrant the finding by the jury that the defendant was negligent in not properly maintaining and caring for the bridge in question. In addition to that, however, it became incumbent upon the plaintiff to establish, affirmatively, freedom from contributory negligence upon the part of the intestate. Absence of proof upon that question is fatal to the plaintiff's cause of action.

The jury are not to be permitted to guess or conjecture; there must be evidence showing proper care and caution under the circumstances, or evidence from which the jury can infer proper care and caution upon the part of the deceased.

Is there any such evidence in this case? Plaintiff's intestate together with one Cameron were driving from the city of Albany to their homes in the county of Greene; both had been drinking; the intestate appears to have been almost helplessly drunk. Cameron admits 'that he felt the effects of what he had been drinking.

THIRD DEPARTMENT, DECEMBER TERM, 1895.          [Vol. 90.

Cameron was driving, and the intestate at the time, or just prior to the happening of the accident, was down upon his knees in front of the wagon seat, his intoxication being such that he could not remain upon the seat. It was about half-past seven in the evening, and seems to have been intensely dark.

The bridge in question is between twelve and thirteen feet in width; the road is a little over thirty-three feet from fence to fence; the traveled portion of the road is eleven feet in width.

Before reaching the bridge the horses had gone off the roadway at various points and come back, and some distance before reaching the bridge the horses again strayed away from the road.

About forty rods distant from the bridge stood a house, in which a light was to be seen as it was approached. Cameron says: "I knew about where the bridge was in a general way, and that I was coming close to it when I saw the light; now and then I watched the light; I didn't really think about the bridge until I struck upon it; I came on it all right with the horses; I knew it was there; I hadn't been looking out for it as I came along, not particularly; I supposed I was in the road as much as I am in the chair; I sat there easy; I was not thinking about running off the bridge; I supposed I was in the road and getting across the bridge right along; I wasn't giving myself any particular uneasiness about the bridge; I knew it was there and thought it would be all right when I got there."

Again, he says: "It was quite dark; you could not see the road to drive without the lantern except to see generally the fences and the make of the road." And again he says: "I couldn't see the road at all sitting in the seat; I had the lines in one hand and the horses kind of picked their way; they walked right along until we came to this bridge; I had to leave it to their instinct or what they could do as to following the road; I knew when we came on the bridge; the next thing I knew we were bottom side up, or the wagon was."

He stated that the first three or four planks as he went on the bridge extended further out over the side of the bridge than those next succeeding them; and that before reaching the bridge they were off the road and the horses turned in again, and upon examining the bridge next morning he says: "I saw the mark of the left-

hand wagon wheel where it first went on the bridge; it didn't go straight in crossing these three or four planks; I was out of the road and had to go *kittering* to get on the bridge; after the wheel got on the bridge it went straight on the plank; when it got to the end of the third plank then the wheel went down in consequence of a short plank." Upon his cross-examination he testifies: " I was about half way out of the road before I came to the bridge; I got out of the road coming down from Mead's to the bridge; the wagon tipped twice and I noticed it and pulled in; when I was out of the road at the bridge I didn't notice I was out of the road until I went off the bridge; I had been out twice before that; the wagon tipped a little and I knew that I was out of the road and I pulled the team in and went on; I know now that the fact was that I was out of the road just before I got to the bridge; within twenty feet of the bridge I was in the ditch at the side of the road; I didn't know it then; I know it now; we were about three feet three inches from the beaten track; before we got to the bridge the horses hauled out into the road; I didn't; if the horses had gone straight ahead, three feet from the bridge, my left wheel would not have come within three feet of the bridge; they would not have touched the bridge."

This testimony of the plaintiff's principal witness, the survivor of the accident, shows pretty clearly how the accident happened, and its cause, and furnishes no evidence from which the jury could properly find that the plaintiff's intestate exercised due care and caution, and was not guilty of contributory negligence.

The care and caution necessary to be observed is to be measured by the circumstances of each case, and is commensurate with the difficulties and dangers of the locality, and the danger to be apprehended. The plaintiff's intestate in this case, I think, was properly chargeable with the manner in which Cameron conducted himself. If Cameron exercised due and proper caution, under the circumstances, it inures to the benefit of the plaintiff; and, if he did not, the plaintiff's intestate, I think, must be held responsible for it.

There is no evidence that Cameron did anything by way of precaution — no affirmative evidence of any act done by him — and I can find no evidence from which the jury could draw any inference of care and precaution on his part.

Cameron knew that he was approaching a narrow bridge; he

knew that he had already strayed from the road. It was so dark that he couldn't see the road at all sitting in the seat. He made no effort to guide his horses at all, leaving it, as he says, to their instinct. He says that he was not looking out particularly for the bridge, although he knew it was there. It seems to me that in approaching a narrow bridge, crossing a stream, upon a night like that testified to in this case, the conduct of Cameron, as testified to by himself, was not such as to warrant the jury in finding affirmatively that he was free from contributory negligence.

The judgment and order should be reversed and a new trial granted, costs to abide the event.

MAYHAM, P. J., concurred.

PUTNAM, J. (dissenting):

The question in this case is whether the trial court was justified in submitting to the jury the question as to the alleged contributory negligence of plaintiff's intestate or his servant. Judge DENIO, in *Johnson* v. *The Hudson R. R. R. Co.* (20 N. Y. 73), says: "The true rule, in my opinion, is this: The jury must eventually be satisfied that the plaintiff did not by any negligence of his own contribute to the injury. The evidence to establish this may consist in that offered to show the nature or cause of the accident, or in any other competent proof. To carry a case to the jury the evidence on the part of the plaintiff must be such as, if believed, would authorize them to find that the injury was occasioned solely by the negligence of the defendant. It is not absolutely essential that the plaintiff should give any affirmative proof touching his own conduct on the occasion of the accident." In *Chisholm* v. *State* (141 N. Y. 246–249) Judge BARTLETT remarks: "Although it is a fundamental principle that the absence of negligence on the part of the plaintiff, contributing to the injury, must be affirmatively shown by him, yet this may be done by direct proof, or by circumstances. (*Hart* v. *Hudson River Bridge Co.*, 80 N. Y. 622; *Hoffman* v. *Union F. Co.*, 47 id. 176–186; *Button* v. *Hudson River R. R. Co.*, 18 id. 248.) If different conclusions can be drawn from these circumstances it is a question for the jury, or in this case for the commissioners. * * * In *Harris* v. *Uebelhoer* (75 N. Y. at page 175) Chief Judge FOLGER remarked: 'A public highway may be used in

the darkest night; a night so dark as that the keenest and clearest vision might not be able to detect obstacles and defects. In such a case any man traveling upon it is practically a blind man.' One passing along a sidewalk has a right to presume it is safe. (*McGuire* v. *Spence*, 91 N. Y. 303; *Weed* v. *Vill. of Ballston Spa*, 76 id. 329; *Brusso* v. *Buffalo*, 90 id. 679.)"

In this case, Cameron, the driver of plaintiff's intestate, was sworn and stated all the facts which occurred at the time of his death. The accident happened on a dark night; so dark that Cameron could not see the roadway and was compelled to allow the horses to choose their way. He could only see the fence on each side. I infer from the evidence that the team was going on a walk. The horses had been out of the traveled part of the road twice shortly before they reached the bridge, but they were in the roadway when they actually came to it. It is to be inferred from the evidence that if the planks had been properly placed on the bridge the accident would not have happened, as both wheels were on the planks when the wagon reached the place of the accident.

The question before the jury was, did the evidence, by any construction that could be fairly placed upon it, show the absence of contributory negligence on the part of Cameron? As we have seen, he had a right to presume the bridge safe. If his testimony was to be relied on, he was driving slowly along a road with which he was not familiar, on a night so dark that he could not see the roadway, allowing the horses to choose their way, when his wagon was overturned by a defect in a bridge on the highway.

It is difficult to see what Cameron could have done that he did not do. Not being able to see the roadway, as Judge FOLGER remarked in *Harris* v. *Uebelhoer* (*supra*), he was "practically a blind man." He could not guide the horses in any other way than he testified he did; when he found by the pitching of the wagon that they were out of the road, he turned them back into it. It may be that his safest course, under the circumstances, was the one he adopted, to allow the horses to pick their way. I cannot understand how he could have taken any other course, unless he had alighted from the wagon and led the horses.

The fact that the horses before they came to the bridge were out of the roadway twice, does not necessarily show negligence on the

474 PEOPLE ex rel. RAILWAYS CO. *v.* ROBERTS.

THIRD DEPARTMENT, DECEMBER TERM, 1895. [Vol. 90.

part of the driver. The night was so dark that he could not see the roadway, and experience teaches us that under such circumstances such an occurrence as the one under consideration is likely to happen to the most careful driver.

The circumstances surrounding the death of plaintiff's intestate being fully shown, it seems to me that whether Cameron did or did not do all that a careful driver should have done under the circumstances was a question of fact. As Judge ALLEN said in *Massoth* v. *D. & H. R. R. Co.* (64 N. Y. 529), "The question of contributory negligence in cases of this character is ordinarily one of fact for the jury. It depends usually upon a variety of circumstances, and upon inferences from the facts proved, calling for the exercise of practical knowledge and experience, and is peculiarly within the province of a jury of twelve men." And as Judge BARTLETT remarked in *Chisholm* v. *State* (*supra*), "If different conclusions can be drawn from these circumstances, it is a question for the jury."

I regard the case as a close and doubtful one, but am inclined to believe that the trial court properly submitted the questions involved to the jury.

Judgment reversed and a new trial granted, costs to abide the event.