JOHN H. TITUS, as Administrator, etc., of ALEXANDER WHITFORD, Deceased, Appellant, v. THE TOWN OF NEW SCOTLAND, in the County of Albany, Respondent.

*Negligence — driving upon a bridge on a dark night — the question of negligence is for the jury.*

When the circumstances are such that men of ordinary prudence might differ as to the character of the act, or when the inferences to be drawn from the testimony are doubtful, the question whether the facts impute negligence is a question for the jury.

In an action based upon negligence, it appeared that the plaintiff's intestate, who, with his driver, was traveling along a highway of a town on a very dark night, drove upon a bridge, less than half the width of the highway, but on a level with it, and having no guards at its approaches; that the wagon entered safely upon the bridge, but in consequence of the fourth and some subsequent planks of the bridge being somewhat shorter than the three planks which preceded

them, the outer wheels of the wagon, which had passed safely over the first three planks, ran off the side of the bridge, precipitating the wagon into the stream below, causing the death of the intestate. The driver testified that he was looking for the bridge, was driving slowly, and was trusting to the horses (a well-broken team) to keep the beaten track, pulling them into it whenever he felt the wagon tip a little.

*Held,* that the question as to the negligence of the town, and the question as to the driver's contributory negligence, should have been submitted to the jury.

APPEAL by the plaintiff, John H. Titus, as administrator, etc., of Alexander Whitford, deceased, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Greene on the 24th day of March, 1896, upon the dismissal of the complaint upon the merits, directed by the court, after a trial before the court and a jury, at a Trial Term of the Supreme Court held in and for the county of Greene.

*Frank H. Osborn,* for the appellant.

*J. Newton Fiero,* for the respondent.

PARKER, P. J.:

The action is to recover against the defendant for its negligent omission to properly protect a bridge, and the approaches thereto, erected upon one of its highways. At the point where the bridge was located the highway between the fences was about thirty-three feet wide. The width of the traveled track between the ditches was about twenty feet. The bridge was twelve feet wide, and placed a little to the east of the center of the road. There were no guards of any kind upon either side of the bridge. The bridge and its abutments were on a level with the highway, so that there was practically no rise in driving upon it, and there were no guards or protection of any kind to prevent driving directly from the highway into the stream, either above or below the bridge. It was about three feet from the bridge to the water under it, and the water was about three feet deep at that point.

Upon the evening of November 28, 1893, the plaintiff's intestate was traveling from the north along that highway. His hired man was driving. The horses safely entered upon the bridge at its northerly end, but so closely to its east edge that the left wheels of the wagon, after passing over the first three planks, ran off the east side

of the bridge, turned the wagon over into the stream below, and the plaintiff's intestate was killed. The horses were not thrown off the bridge ; and it is to be noticed that had all the plank of the bridge floor extended as far east as did the first three planks on which the front wheels of the wagon entered, the wagon would not have run off. But the five planks of the flooring, which lay next south of the third plank from the north end, were pushed over to the west some six inches or more, and thus when the wheel came to the south edge of the third plank it was so far east that there was no flooring under it, and it ran off. None of the planks were nailed or fastened so that they could not be moved from east to west over the timbers of the bridge. The evening was extremely dark; so much so that the bridge could not be distinguished from the rest of the road.

Upon the trial the plaintiff was nonsuited, and from the judgment entered thereon this appeal is taken.

We have no difficulty in concluding that the question of the defendant's negligence should have been left to the jury. We are by no means prepared to hold as matter of law that a town has performed its full duty to the public by maintaining such a bridge with the planks of the floor in the position and condition in which these were, and with no more protection against driving off of it than this one had. But the ground upon which the nonsuit was granted was that the plaintiff had not shown that the deceased was himself free from contributory negligence, and the trial court was of the opinion that the decision of the General Term in the third department in this very case was controlling upon that question. A prior trial having been had and a verdict rendered for the plaintiff, an appeal was taken, and the court reversed the judgment and ordered a new trial upon the ground that the case did not disclose an absence of contributory negligence on the part of the deceased. In that case (see 90 Hun, 468, 471, 472) it is held that the negligence of his driver must be treated as the negligence of the deceased, and the justice writing the opinion in that case summarizes the evidence before him as to the driver's negligence substantially as follows : "There is no evidence that Cameron (the driver) did anything by way of precaution, no affirmative evidence of any act done by him, and I can find no evidence from which the jury could draw any

inference of care and precaution on his part. Cameron knew that he was approaching a narrow bridge; he knew that he had already strayed from the road. It was so dark that he couldn't see the road at all sitting in the seat. He made no effort to guide his horses at all, leaving it, as he says, to their instinct. He says that he was not looking out particularly for the bridge, although he knew it was there." And in a prior part of his opinion he quotes and lays stress upon the testimony of Cameron, to the effect that he did not really think about the bridge until he struck it. Upon such facts as that the court decided that the driver was not free from contributory negligence. It is manifest that the case before us presents a very different state of facts. It appears from the evidence of Cameron that the road for about a mile in the neighborhood of the bridge is a level one; that when he entered upon that level he knew that the bridge was somewhere upon it, and that he was looking for it, and expecting to come upon it — not expecting to see it, but to drive upon it; that he drove slowly across that level, trusting to his horses to keep the beaten track, but watching, and whenever he felt his wagon tip a little he would pull the horses back into the beaten road. · Such a method of approaching the bridge is a very different one from allowing his horses to travel along without any care or attention, without looking out for the bridge, and not really thinking about it until he struck it. Here is certainly some degree of precaution and watchfulness. Cameron used his judgment as to the best and safest way to drive upon the bridge under the circumstances. He trusted to the instinct of his horses so far as he might, but watched carefully to discover by feeling, inasmuch as he could not see when they left the track, and then guided them back into it. It appears from the evidence of several of the plaintiff's witnesses that, with a well-broken team, such as Cameron had, such is the safest and best manner of driving in a very dark night. Also, it has been held, that driving in a dark night without a lantern is not negligence as matter of law. (*Rector* v. *Pierce*, 3 T. & C. 416, 420. See, also, *Harris* v. *Uebelhoer*, 75 N. Y. 169; *Davenport* v. *Ruckman*, 37 id. 573.)

In the face of these facts we cannot hold as matter of law that Cameron did not exercise that care, in driving on to the bridge, which a man of ordinary prudence would have exercised. He cer-

tainly exercised some care.  And the case comes within the well-settled rule that, when the circumstances are such that men of ordinary prudence might differ as to the character of the act, or when the inferences to be drawn from the testimony are doubtful, the question whether the facts impute negligence is a question for the jury. (*Stackus* v. *N. Y. C. & H. R. R. R. Co.*, 79 N. Y. 464, 468.  See also cases cited in Thomas on Neg. 365.)

It is also to be noticed that the horses went safely on to the bridge, and that the wagon itself made a safe entry on to the north end, but, owing to the fact that the fourth, fifth, sixth, seventh and eighth planks from the north end did not extend so far east by six or seven inches as the first three did, the left wheel of the wagon ran off, after passing safely over the first three.  None of the planks were fastened.  Had the flooring presented a straight line along the east side of the bridge, then the entry which the wagon made upon the bridge would have taken it safely across.  These facts are also to be considered in determining whether Cameron's negligent driving contributed to the accident.  We, therefore, conclude that, as the case comes to us, it presents a state of facts essentially different from those which controlled the decision upon the former appeal, and that the motion for a nonsuit should not have been granted.

We do not, of course, assume to pass upon the truthfulness of Cameron's testimony.  For the purposes of this appeal we assume it to correctly present the facts of the case. (*Stuber* v. *McEntee*, 142 N. Y. 200, 205; *Bickford* v. *Menier*, 31 N. Y. St. Repr. 341.) Upon another trial the jury will judge as to how much of it, if any, should be rejected.

The judgment is reversed and a new trial granted, costs to abide the event.

All concurred.

Judgment reversed and a new trial granted, costs to abide the event.