### TITUS v. TOWN OF NEW SCOTLAND.

(Supreme Court, Appellate Division, Third Department. December 2, 1896.)

1. DEFECTIVE BRIDGE—NEGLIGENCE.

    Whether a town is negligent in furnishing a bridge 12 feet wide above a stream 3 feet below it, in connection with a road having a traveled track 20 feet wide, with no guards to the bridge, and with five planks of the flooring, next beyond the third from the end, extending not so far to one side by 6 or 7 inches as the first three, is a question for the jury.

2. SAME—CONTRIBUTORY NEGLIGENCE.

    Where a driver of a team, which went on a bridge so close to the side that the left wheels of the wagon, after passing over the first three planks, ran off the side, owing to the next five planks not extending so far to the side by 6 or 7 inches as the first three, testifies that, when he came on the level road extending for about a mile from the bridge, he knew the bridge was somewhere on it, and was watching for it, not expecting to see it, for the night was so dark that it could not be distinguished from the rest of the road, but to drive on, and that he drove slowly, trusting to his horses to keep the beaten track, but watching and pulling his horses back into the beaten road when he felt his wagon tip a little; and witnesses testify that, with a well-broken team, such as he had, such is the safest and best manner of driving in a very dark night, —it is error to hold, as matter of law, that he was negligent.

Appeal from trial term, Greene county.

Action by John H. Titus, administrator of Alexander Whitford, deceased, against the town of New Scotland. From a judgment of nonsuit, plaintiff appeals. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

J. A. & A. C. Griswold, for appellant.
Parker & Fiero, for respondent.

PARKER, P. J. The action is to recover against the defendant for its negligent omission to properly protect a bridge and the approaches thereto, erected upon one of its highways. At the point where the bridge was located the highway between the fences was about 33 feet wide. The width of the traveled track between the ditches was about 20 feet. The bridge was 12 feet wide, and placed a little to the east of the center of the road. There were no guards of any kind upon either side of the bridge. The bridge and its abutments were on a level with the highway, so that there was practically no rise in driving upon it, and there were no guards

or protection of any kind to prevent driving directly from the highway into the stream, either above or below the bridge. It was about 3 feet from the bridge to the water under it, and the water was about 3 feet deep at that point. Upon the evening of November 28, 1893, the plaintiff's intestate was traveling from the north along that highway. His hired man was driving. The horses safely entered upon the bridge at its northerly end, but so closely to its east edge that the left wheels of the wagon, after passing over the first three planks, ran off the east side of the bridge, turned the wagon over into the stream below, and the plaintiff's intestate was killed. The horses were not thrown off the bridge, and it is to be noticed that, had all the plank of the bridge floor extended as far east as did the first three plank on which the front wheels of the wagon entered, the wagon would not have run off. But the five plank of the flooring which lay next south of the third plank from the north end, were pushed over to the west some six inches or more, and thus, when the wheel came to the south edge of the third plank, it was so far east that there was no flooring under it, and it ran off. None of the plank were nailed or fastened, so that they could not be moved from east to west over the timbers of the bridge. The evening was extremely dark,—so much so that the bridge could not be distinguished from the rest of the road. Upon the trial the plaintiff was nonsuited, and from the judgment entered thereon this appeal is taken.

We have no difficulty in concluding that the question of defendant's negligence should have been left to the jury. We are by no means prepared to hold, as matter of law, that a town has performed its full duty to the public by maintaining such a bridge, with the planks of the floor in the position and condition in which these were, and with no more protection against driving off of it than this one had. But the ground upon which the nonsuit was granted was that the plaintiff had not shown that the deceased was himself free from contributory negligence, and the trial court was of the opinion that the decision of the general term in the Third department in this very case was controlling upon that question. A prior trial having been had, and a verdict rendered for the plaintiff, an appeal was taken, and that court reversed the judgment, and ordered a new trial, upon the ground that the case did not disclose an absence of contributory negligence on the part of the deceased. In that case (see 90 Hun, 468, 471, 472, 35 N. Y. Supp. 971, 973) it is held that the negligence of his driver must be treated as the negligence of the deceased, and the justice writing the opinion in that case summarizes the evidence before him as to the driver's negligence substantially as follows:

"There is no evidence that Cameron [the driver] did anything by way of precaution, no affirmative evidence of any act done by him, and I can find no evidence from which the jury could draw any inference of care or precaution on his part. Cameron knew he was approaching a narrow bridge. He knew that he had already strayed from the road. It was so dark that he could not see the road at all sitting in the seat. He made no effort to guide his horses at all, leaving it, as he says, to their instinct. He says he was not looking out particularly for the bridge, although he knew it was there."

And in a prior part of his opinion he quotes and lays stress upon the testimony of Cameron to the effect that he did not really think about the bridge until he struck it. Upon such facts that court decided that the driver was not free from contributory negligence. It is manifest that the case before us presents a very different state of facts. It appears from the evidence of Cameron that the road for about a mile in the neighborhood of the bridge is a level one; that when he entered upon that level he knew that the bridge was somewhere upon it, and that he was looking for it, and expecting to come upon it,—not expecting to see it, but to drive upon it; that he drove slowly across that level, trusting to his horses to keep the beaten track, but watching, and whenever he felt his wagon tip a little he would pull the horses back into the beaten road. Such a method of approaching the bridge is a very different one from allowing his horses to travel along without any care or attention, without looking out for the bridge, and not really thinking about it until he struck it. Here is certainly some degree of precaution and watchfulness. Cameron used his judgment as to the best and safest way to drive onto the bridge, under the circumstances. He was not driving down upon it inattentively, and heedless of its existence, as it would seem from the evidence on the former trial he was doing. He trusted to the instinct of his horses so far as he might, but watched carefully to discover by feeling. inasmuch as he could not see, when they left the track, and then guided them back into it. It appears from the evidence of several of plaintiff's witnesses that, with a well-broken team, such as Cameron had, such is the safest and best manner of driving in a very dark night. Also, it has been held that driving in a dark night without a lantern is not negligence as matter of law. Rector v. Pierce, 3 Thomp. & C. 416, 420. See, also, Harris v. Uebelhoer, 75 N. Y. 169; Davenport v. Ruckman, 37 N. Y. 573.

In the face of these facts we cannot hold, as matter of law, that Cameron did not exercise that care in driving onto the bridge that a man of ordinary prudence would have exercised. He certainly exercised some care; and the case comes within the well-settled rule that, when the circumstances are such that men of ordinary prudence might differ as to the character of the act, or when the inferences to be drawn from the testimony are doubtful, the question whether the facts impute negligence is a question for the jury. Stackus v. Railroad Co., 79 N. Y. 464, 468. See, also. cases cited in Thomas, Neg. p. 365. It is also to be noticed that the horses went safely onto the bridge, and that the wagon itself made a safe entry onto the north end, but, owing to the fact that the fourth, fifth, sixth, seventh, and eighth plank from the north end did not extend so far east by six or seven inches as the first three did, the left wheel of the wagon ran off, after passing safely over the first three. None of the plank were fastened. Had the flooring presented a straight line along the east side of the bridge, then the entry which the wagon made upon the bridge would have taken it safely across. These facts are also to be considered in determining whether Cameron's negligent driving contributed to the accident. We therefore

conclude that, as the case comes to us, it presents a state of facts essentially different from those which controlled the decision upon the former appeal, and that the motion for a nonsuit should not have been granted.

We do not, of course, assume to pass upon the truthfulness of Cameron's testimony. For the purposes of this appeal we assume it to correctly present the facts of the case. Stuber v. McEntee, 142 N. Y. 200, 205, 36 N. E. 878; Bickford v. Menier (Sup.) 9 N. Y. Supp. 775. Upon another trial the jury will judge as to how much of it, if any, should be rejected.

The judgment is reversed, and a new trial granted, costs to abide the event. All concur.